In the Matter of RECREATION LINES, INC., Petitioner, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

In the Matter of WALTERS TRANSIT CORP., Petitioner, against PUBLIC SERVICE COMMISSION OF THE STATE OF NEW YORK, Respondent.

Third Department, December 2, 1958.

*Harold J. Drescher* for Recreation Lines, Inc., petitioner.

*Robert E. Goldstein* for Walters Transit Corp., petitioner.

*Kent H. Brown, George H. Kenny, Sidney Kabalkin* and *Harry T. O'Brien* for respondent.

HERLIHY, J. Heights Limousine Service (hereinafter referred to as the licensee) made application to the Public Service Commission for a permit as a "contract carrier" pursuant to article 10 of the Public Service Law, which became effective September 1, 1955. Prior to the application it operated without any Public Service Commission sanction. The petitioners herein opposed such application, claiming the licensee to be an "omnibus carrier". Following a hearing, the permit was granted to continue such operation, the commission having determined the service was not operated for the use and convenience of the public but was a "specialized service" not subject to the provisions of the Public Service Law and the Transportation Corporations Law which required a certificate of public convenience and necessity and local consent. The petitioners have appealed from such determination.

The facts are not in dispute. Petitioners operate omnibus lines between points in Manhattan and nearby race tracks with the consent and permission of the municipalities through which they pass and a certificate of public convenience and necessity issued by the Public Service Commission. The licensee since 1951 has operated during the horse racing season three seven-passenger limousines between a Manhattan terminal (1445 St. Nicholas Avenue) and various tracks in the metropolitan area. It advertises by having signs in the windows of its terminal and by business cards which are distributed to customers and the public. It has a large group of steady customers but solicits additional adults to the limit of the capacity of its vehicles. Its customers by appointment must either be present at the terminal or at a designated location to be picked up at approximately the same time each race day, the cars leaving at various intervals of time. No stops are made except by appointment and the routes travelled are governed by the location of its passengers. It was customary for one of the automobiles to leave the track following the seventh race and the remaining following the last race. Only the regular customers are taken on the return trip, which includes the ones who were conveyed to the track and those who have made telephone reservations for the return trip. The various customers are brought to their destination, otherwise to the terminal. The limousines are in no way marked or identified as vehicles for hire.

Article 10 of the Public Service Law regulates transportation by contract carriers of passengers by motor vehicles. They are required to obtain permits and comply with certain other regulations less stringent than those affecting omnibus lines. Carriers, such as the licensee, that have maintained a bona fide operation prior to February 1, 1955, were issued permits upon timely application without the need of establishing the operation was consistent with the public interest.

The term " contract carrier of passengers by motor vehicle " is defined as every person who engages in the transportation by motor vehicle of passengers for compensation other than in the operation of an " omnibus line ", excluding hotel buses, taxicabs, school buses, nonprofit car pools, municipally licensed sightseeing buses, and casual transportation for hire by persons not regularly so engaged (Public Service Law, § 2, subd. 32, as added by L. 1955, ch. 633, § 1). The definition of " omnibus line " was simultaneously amended to exclude motor vehicles used solely for the transportation of a group for a common purpose under special contract or agreement and for which a permit has been issued pursuant to the Contract Carrier Statute (Public Service Law, § 2, subd. 28). Otherwise the definition of omnibus line remained the same, i.e., a motor vehicle operated for the use and convenience of the public, usually along the same route or between stated termini, or on a fixed stated schedule, carrying passengers for hire. The contention of petitioners is that unless a service having some of the characteristics of an omnibus line comes within the " special contract " exclusion added to the omnibus line definition by the Contract Carrier Statute (L. 1955, ch. 633, § 2), it must be classified as an omnibus line.

There is no ambiguity in the language of the statutory definition of contract carriers, broad though it may be. It includes all carriers of passengers for hire other than those falling within the excluded categories, the first of which is omnibus lines. The salient issue, then, is whether the commission erred in refusing to classify the licensee's service as the operation of an omnibus line.

While it may be true, as petitioners have argued, that the commission was mistaken in finding the service in question is " not operated for the use and convenience of the public " since it has long been held no carrier serves all the public (*Terminal Taxicab Co.* v. *District of Col.,* 241 U. S. 252, 255; *Surface Transp. Corp.* v. *Reservoir Bus Lines,* 271 App. Div. 556 [1st Dept., 1946]), and that the commission's characterization of the service as a " specialized service " does not conform to the precise language used by the Legislature, the test to be applied by

courts in reviewing this determination would seem to be that expressed in *Matter of Mounting & Finishing Co.* v. *McGoldrick* (294 N. Y. 104, 108): "Of course, statutory construction is the function of the courts ' but where the question is one of application of a broad statutory term in a proceeding in which the agency administering the statute must determine it initially, the reviewing court's function is limited ' (*Board* v. *Hearst Publications*, 322 U. S. 111, 131). The administrative determination is to be accepted by the courts ' if it has " warrant in the record " and a reasonable basis in law ' (same citation.) ' The judicial function is exhausted when there is found to be a rational basis for the conclusions approved by the administrative body' (*Rochester Tel. Corp.* v. *U. S.,* 307 U. S. 125, 146). "

In support of the contention of the respective parties, they refer to certain memoranda submitted to the Legislature and to the Governor recommending his signature. Action by both was necessary. (*Matter of Doyle,* 257 N. Y. 244, 261.) Such memoranda are merely an aid to construction. (McKinney's Cons. Laws of N. Y., Book 1, Statutes, § 125.)

The broad general purpose of the legislation was to include all types of public " for hire " conveyances not expressly defined or already classified as an " omnibus carrier ". While it might be said that licensee's business had certain features common to an " omnibus carrier " it can likewise be said it had certain features common to a " public taxi service ". (*Andy's Taxi Service* v. *Lawrence's Taxi Service,* 285 App. Div. 146.)

When the task of classifying carriers of passengers for hire into omnibus lines and contract carriers is delegated to the Public Service Commission under broad statutory language, a reasonable latitude must be left to the agency. The instant determination is reasonable and supported by substantial evidence.

Petitioner Recreation Lines, Inc., contends that the licensee is governed by section 66 of the Transportation Corporations Law. This section provides that no motor vehicle line or route, carrying passengers in competition with another common carrier which is required by law to obtain the consent of local authorities to operate over city streets, shall be operated in such city, nor shall a certificate of public convenience and necessity be issued therefor, until the owner shall have procured the consent of the local authorities of such city. The Contract Carrier Statute (L. 1955, ch. 633, § 12) amended section 66 to exclude contract carriers of passengers from the application thereof. Hence, as the respondent argues, if the disputed service is that of a contract carrier, section 66 is wholly inapplicable.

The various cases cited by petitioner were decided prior to the enactment of the Contract Carrier Statute and are, therefore, distinguishable. Their value, if any, as precedents in deciding this case is limited and not controlling under the present facts.

The determination of the Public Service Commission should be confirmed, with $50 costs.

FOSTER, P. J., BERGAN, GIBSON and REYNOLDS, JJ., concur.

Determination confirmed, with $50 costs.